OPINION OF THE COURT
Fahey, J.
In this CPLR article 78 proceeding, we hold that the respondent agency’s denial of petitioner’s application for certification as a school bus driver was not arbitrary and capricious. We conclude that Matter of Acosta v New York City Dept. of Educ. (16 NY3d 309 [2011]), on which petitioner relies, is distinguishable.
L
Petitioner Luther Dempsey applied to the New York City Department of Education (DOE) in 2006 for certification as a school bus driver. He indicated that he had been employed for about two years by a private bus company, transporting preschool children. On his application, petitioner disclosed that he had been convicted of crimes. In all, he had been convicted of two drug-related felonies (criminal possession of a controlled substance in the fifth degree and attempted criminal sale of a controlled substance in the third degree) in 1990, as well as three theft-related misdemeanors, the most recent in 1993, when petitioner was 41 years old. Petitioner explained that his criminal history was related to a past drug addiction, which he had overcome in the mid-1990s through a drug treatment program.
In July 2006, the DOE denied petitioner’s application. In a letter to the bus company employing petitioner, a DOE executive stated that the reason for the denial was that petitioner had been “convicted of an offense that rendered] [him] unsuit *295 able to perform duties associated with the transportation of school age children.” As a result of petitioner’s failure to receive certification, the bus company terminated petitioner’s employment.
Petitioner and other individuals who had been denied certification by the DOE based on criminal convictions commenced a proceeding pursuant to CPLR article 78 challenging the denials. Supreme Court dismissed the proceeding. However, the Appellate Division modified Supreme Court’s judgment, granted the petition to the extent of annulling the DOE’s determinations, and remitted to the DOE, “to give petitioners an opportunity to review the information upon which DOE’s determinations were based and to submit statements and documents pursuant to Chancellor’s Regulation C-105” (Matter of Hasberry v New York City Dept. of Educ., 78 AD3d 609, 609 [1st Dept 2010]). That DOE regulation provides, in pertinent part, that
“[i]f, prior to the conclusion of any background investigation, information of a derogatory nature is obtained which may result in denying the application for license, certification or employment, an applicant will be given an opportunity to review such information with [DOE’s Office of Personnel Investigation] and to include in the investigatory file, any written statements or documents which refute or explain such information” (New York City Department of Education, Regulation of the Chancellor C-105 § 2 at 4).
Petitioner then submitted various documents to the DOE. He sent several letters from representatives of bus companies for which he had worked, including his most recent employer, as well as a letter from a manager at a facility where he had worked as a security officer; all of the letters described him as a reliable and responsible employee. He also submitted a certificate of relief from disabilities with respect to his felonies, which had been issued by Supreme Court in 2002.
In March 2011, after interviewing petitioner, the DOE again denied his application. Petitioner sought a “[w]ritten statement upon denial of license or employment,” pursuant to Correction Law § 754. The Executive Director of the DOE’s Office of Pupil Transportation (OPT), in a May 4, 2011 letter setting forth the reasons for the denial, explained that petitioner was “unsuit *296 able for [DOE] certification of approval for school bus service and the resultant close supervision of school children in the relative [sic] unsupervised environment of a school bus,” in light of certain factors, including “the bearing that the particular criminal offense (s) for which the person was previously convicted will have on his/her fitness and/or ability to perform school bus duties and responsibilities safe[l]y and reliably,” “the mature age of the person at the time of some of the offenses,” “the seriousness of the particular offense(s),” and “the interests and direct role of the [DOE] to protect the safety and welfare of school children, parents and school employees.”
IL
Petitioner commenced this CPLR article 78 proceeding against the DOE and its Chancellor in July 2011, contending that the DOE’s determination denying his application for certification was arbitrary and capricious. Petitioner alleged that DOE had violated Correction Law §§ 752 and 753, Executive Law § 296 (15), and Administrative Code of the City of New York § 8-107 (10). He sought annulment of the determination, declaratory judgment, and an order directing the DOE to approve his application, as well as damages.
In its answer, the DOE denied petitioner’s allegations, and explained its denial of petitioner’s application with reference to his “very long record of criminal behavior.” In an affidavit, the OPT’s Executive Director detailed the reasons for the decision to deny petitioner’s renewed application, including petitioner’s criminal convictions, a gap in his employment history, and his age at the time of his last conviction. The Executive Director stated that he had concluded that “ [petitioner would pose an unreasonable risk to the safety and welfare of the young children with whom he would come into contact.” For his part, the DOE executive who had denied petitioner’s original application stated in an affidavit that it had been “of great concern” to him that petitioner had committed the drug-related felonies and the 1993 misdemeanor “as a mature adult,” explaining that while “[s]uch a serious error in judgment could possibly be excused were it the result of a youthful indiscretion,” it was of *297 greater significance that petitioner had shown “such poor judgment and control at the age of 41.”[1]
Supreme Court granted the petition to the extent of annulling DOE’s determination, ordered the DOE to approve petitioner’s application, and remanded. Supreme Court concluded that the DOE had
“failed to consider all eight factors as set forth in section 753 of the Correction Law. . . . Respondent only considered petitioner’s criminal history when reviewing his application and failed to consider his extensive evidence of rehabilitation. Petitioner’s last conviction was eighteen years ago and he obtained a certificate of relief from disabilities” (2012 NY Slip Op 30552[U], *4 [Sup Ct, NY County 2012]).
The Appellate Division reversed Supreme Court’s judgment, denied the petition, and dismissed the proceeding (108 AD3d 454 [1st Dept 2013]). The Appellate Division held that
“[t]he DOE’s May 4, 2011 determination that petitioner’s prior drug-related convictions as an adult bore on his fitness and/or ability to perform his school bus duties was rationally based, and it shows DOE gave due consideration to the relevant factors under Correction Law § 753 before denying his application. Although petitioner avers he has been drug free since 1994, and his crimes were directly related to his drug addiction at the time, the offenses were not youthful indiscretions (he was 41 years old), but were of a serious nature since each involved narcotics” (id. at 456).
The Appellate Division concluded that Supreme Court had “improperly reweighed the factors set forth in the Correction Law and substituted its own judgment. The nature of the criminal conduct for which petitioner was convicted has a direct bearing on his fitness or ability to perform one or more of the duties or responsibilities” of a school bus driver (id. [citations omitted]).
*298 One Justice dissented, noting that the DOE’s May 4, 2011 letter
“made no reference to the time that had elapsed since the last conviction (now 20 years), petitioner’s lengthy experience successfully driving school buses with the very same children or type of children he would be driving and supervising were the license granted, or the extensive evidence of complete rehabilitation that petitioner furnished” (108 AD3d at 460 [Freedman, J., dissenting]).
The dissenting Justice would have held that DOE’s determination was arbitrary and capricious.
The Appellate Division granted petitioner leave to appeal to this Court, certifying the question whether its order was properly made. We now affirm.
IIL
Article 23-A of the Correction Law protects persons who seek employment, after having been convicted of one or more criminal offenses, from unfair discrimination. It is impermissible for a public agency or private employer to deny a license or employment application “by reason of the individual’s having been previously convicted of one or more criminal offenses” (Correction Law § 752), unless one of two exceptions applies. An application for a license or employment may be denied on the ground of past criminal history if
“(1) there is a direct relationship between one or more of the previous criminal offenses and the specific license or employment sought or held by the individual; or
“(2) the issuance or continuation of the license or the granting or continuation of the employment would involve an unreasonable risk to property or to the safety or welfare of specific individuals or the general public” (Correction Law § 752).[2]
The Correction Law sets out eight factors that a public agency or private employer must consider when deciding whether one of the section 752 exceptions applies:
*299 “(a) The public policy of this state, as expressed in this act, to encourage the licensure and employment of persons previously convicted of one or more criminal offenses.
“(b) The specific duties and responsibilities necessarily related to the license or employment sought or held by the person.
“(c) The bearing, if any, the criminal offense or offenses for which the person was previously convicted will have on his [or her] fitness or ability to perform one or more such duties or responsibilities.
“(d) The time which has elapsed since the occurrence of the criminal offense or offenses.
“(e) The age of the person at the time of occurrence of the criminal offense or offenses.
“(f) The seriousness of the offense or offenses.
“(g) Any information produced by the person, or produced on his [or her] behalf, in regard to his [or her] rehabilitation and good conduct.
“(h) The legitimate interest of the public agency or private employer in protecting property, and the safety and welfare of specific individuals or the general public.” (Correction Law § 753 [1].)
We have held that “[a] failure to take into consideration each of these factors results in a failure to comply with the Correction Law’s mandatory directive” (Matter of Acosta v New York City Dept. of Educ., 16 NY3d 309, 316 [2011]).
In Acosta, we reviewed the DOE’s denial of an application for a security clearance, filed by an individual who had been convicted of first-degree robbery when she was 17 years old. The DOE contended that issuance of the security clearance would pose “an unreasonable risk to property or to the safety or welfare of specific individuals or the general public” (Correction Law § 752 [2]). We held that the DOE acted arbitrarily because the agency failed to consider each of the factors specified in Correction Law § 753. In particular, we concluded that the DOE did not take into consideration all of the documentation that Acosta submitted in support of her application, and *300 therefore violated Correction Law § 753 (1) (g). The DOE had failed to consider a letter of reference from Acosta’s employer, indicating that she had been hired, in part, on the basis of her “ ‘model references from past employers’ ” (.Acosta, 16 NY3d at 319). DOE’s review, we concluded, amounted to no “more than a pro forma denial of petitioner’s application on the basis of her prior criminal conviction” (id. at 320).
Petitioner relies on Acosta, contending that the DOE has, once again, failed to review anything other than an applicant’s criminal record. We disagree.
Petitioner principally argues that the DOE “ignored the overwhelming and undisputed evidence that [he] had safely and successfully driven young children on school buses for 15 years without incident.” A failure to review evidence provided by an applicant tending to show that he or she had reliably carried out duties similar to those contemplated in the license or employment in question would constitute a violation of section 753 (1) (b) and (g). However, in this case, petitioner adduces no evidence demonstrating that the DOE failed to consider the information he provided concerning his relevant employment history.
In Acosta, it was “plain that, other than her personal statement, the DOE did not consider the documentation that petitioner submitted in support of her application” (Acosta, 16 NY3d at 319), but the same cannot be said here. Rather, the record indicates that the DOE may simply have given “greater weight to . . . the fact and circumstances of [petitioner’s] conviction[s] than to . . . his subsequent accomplishments,” and in these circumstances the DOE’s determination cannot be overturned without “engaging in essentially a re-weighing of the factors, which is beyond the power of judicial review” (Matter of Arrocha v Board of Educ. of City of N.Y., 93 NY2d 361, 366-367 [1999]). Moreover, the DOE is not obliged “to point to any contemporaneously created record that demonstrates that it considered each of the eight factors in reviewing petitioner’s application” (Acosta, 16 NY3d at 319). Contrary to the dissent’s theory, the burden remains on petitioner to show that the denial of his application was arbitrary and capricious.
Petitioner also relies on Correction Law § 753 (2), which provides that, in reaching a determination under section 752, “the public agency or private employer shall also give consideration to a certificate of relief from disabilities or a certificate of *301 good conduct issued to the applicant, which certificate shall create a presumption of rehabilitation in regard to the offense or offenses specified therein.” Here, petitioner received a certificate of relief from disabilities, issued in 2002.
However, Correction Law § 753 (2) does not
“establish a prima facie entitlement to the license or employment. It creates only a presumption of rehabilitation, and although rehabilitation is an important factor to be considered by the agency or employer in determining whether the license or employment should be granted (see, Correction Law 753 [1] [g]), it is only 1 of 8 factors to be considered” (Matter of Bonacorsa v Van Lindt, 71 NY2d 605, 614 [1988]).
Other Correction Law § 753 (1) factors, including criteria applicable here, “such as severity of the criminal offenses, the age of the offender at the time of the offenses, . . . and the nature of the license or employment sought,” may justify denial of petitioner’s application, “notwithstanding the absence of new evidence specifically addressed at overcoming the presumption of rehabilitation” (id.).
Notably, petitioner, who sought a certification that would authorize him to drive a school bus and have supervisory responsibility over school children in an otherwise unmonitored environment, had two felony convictions, as well as multiple misdemeanor convictions. Moreover, as the DOE noted, at the time of his more recent offenses, he was of “mature age,” rather than an age at which an individual’s moral values are typically still developing. In addition, his felony convictions were for possession and attempted sale of a controlled substance, a salient factor to the DOE, which is required by its regulations to take into account the particular concern of the New York City Public School System with offenses involving “possessing, distributing or selling controlled substances” (New York City Department of Education, Regulation of the Chancellor C-105 § 4 at 5). In these circumstances, we cannot conclude that the DOE’s determination, declining to grant the certification despite the certificate of relief from disabilities, was arbitrary and capricious.
Petitioner’s remaining contentions do not afford a basis for relief.
*302 Accordingly, the order of the Appellate Division should be affirmed, with costs, and the certified question not answered as unnecessary.

. The DOE also submitted various exhibits, including notes from three DOE investigators who reviewed petitioner’s application after he sought the reasons for its denial, in which the investigators indicated concern about a lack of community recommendations on behalf of petitioner, his arrest history, and a gap in his employment profile.

. It is not clear which exception was the basis for the DOE’s denial in this case. In his affidavit in support of DOE’s answer, OPT’s Executive Director stated his conclusion that “[pletitioner would pose an unreasonable risk to the safety and welfare of the young children with whom he would come into contact,” suggesting that the DOE invoked the second exception. The *299 better practice is to articulate which Correction Law § 752 exception justifies an adverse employment action at the time the adverse action occurs.